[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14484

_____

BIA Nos. A96-114-158 & A96-437-584

MAXY MEIDIANSYAH MINGKID,
SUMANTRI APRILIANSYAH MINGKID,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 26, 2006)**

Before BIRCH, PRYOR and FAY, Circuit Judges

BIRCH, Circuit Judge:

Maxy Meidiansyah Mingkid ("Maxy") and Sumantri Apriliansyah Mingkid ("Sumantri") petition us for review of the Board of Immigration Appeals's ("BIA") final order (1) affirming the Immigration Judge's ("IJ") decision denying their applications for asylum and withholding of removal and (2) finding that their applications for asylum were frivolous. This case presents two issues of first impression in our circuit. First, whether the IJ may make a frivolity finding notwithstanding a determination that the asylum application is time-barred. Second, whether we have independent jurisdiction to review a BIA's frivolity determination when the petitioner concedes both removability and a failure to establish eligibility for asylum. After review, we conclude that the IJ had jurisdiction to make a frivolity finding and that we have jurisdiction to review such a determination. As to the substance of their petition, we find that the IJ and the BIA's frivolity determination was not based on a specific finding that the Mingkids deliberately fabricated a material element of their applications, and was therefore in error. In addition, we determine that the Mingkids were not allowed a sufficient opportunity to account for the inconsistencies relied on by the IJ in making the frivolity determination. Accordingly, we GRANT the Mingkids' petitions for review of the BIA's order, VACATE the BIA's decision affirming the IJ's finding of frivolousness, and REMAND to the BIA for proceedings consistent with this opinion.

# I. BACKGROUND

Around 3 June 2001, brothers Maxy and Sumantri Mingkid, natives and citizens of Indonesia, were admitted into the United States as non-immigrants without authorization to remain beyond 2 December 2001. The Mingkids remained in the United States beyond that date without authorization and were employed for wages or other compensation without authorization of the Immigration and Naturalization Service. After the Department of Homeland Security served Notices to Appear in Removal Proceedings, the Mingkids submitted applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA"). The brothers claimed past persecution and a well-founded fear of future persecution on account of their religion, Christianity.

The Mingkids' applications for asylum detailed specific incidents of violence they suffered on account of their professed Christianity. Maxy asserted that he once was confronted by four Muslims while he was walking to his home in a predominantly Christian neighborhood and was struck in the face with a broken bottle that cut his eye. Sumantri indicated that once when he was walking home, five Muslims accosted him and asked if he was Christian. After Sumantri answered yes, he claimed the Muslims attacked and beat him, and cut him with a knife. The Mingkids also maintained that they and other members of their family

were constantly harassed and threatened by Muslims on account of their Christian beliefs.

At an initial hearing before the IJ, the Mingkids, through counsel, admitted the factual allegations contained in their Notices to Appear, conceded their removability, and requested relief in the form of asylum and withholding of removal under the INA. During the removal hearing, the IJ advised the Mingkids that if they knowingly filed a frivolous application for asylum, then they would be permanently barred from receiving any benefits under the INA. The IJ further informed the Mingkids that an application was frivolous if any of its material elements were deliberately fabricated. The Mingkids affirmed that they understood the consequences of knowingly making a frivolous application for asylum and indicated that they did not need to make any changes to their applications. Each brother was then separately questioned while the other was sequestered. The Mingkids testified on subjects ranging from where they grew up, their family, their church and religion, to the specific attacks referenced in their applications for asylum.

The IJ issued an oral decision denying the Mingkids' applications for asylum as untimely because they were filed more than one year after their arrival in the United States. The IJ then continued to discuss the merits of the Mingkids' case. The IJ noted various inconsistencies, found the brothers completely lacking

4

in credibility, and also denied their requests for withholding of removal. The IJ then addressed the issue of frivolity. In determining that the applications were frivolous, the IJ specifically referenced discrepancies relating to family members, differing accounts of whether Maxy was at home when Sumantri returned with an open stab wound, and Maxy's procurement of a passport. The IJ also stated that "[a]ll [of] the[] inconsistencies" that he previously had discussed led him to believe that the Mingkids' applications for asylum were "frivolous . . . and that they were knowingly made." R at 65. The BIA adopted and affirmed the IJ's decision. The petition for review followed.

## II. DISCUSSION

On appeal, the Mingkids concede that: (1) their applications for asylum were untimely and such tardiness was not legally excused; (2) they failed to adduce evidence sufficient to establish the degree of persecution necessary to support a claim of asylum; and (3) they lacked credibility to the degree that would entitle them to a discretionary grant of asylum by the Attorney General.[1] The Mingkids argue that the IJ and the BIA erred in finding the Mingkids' applications frivolous.

---

[1] Perhaps because the standard for withholding of removal requires a showing greater than that required for asylum, the Mingkids do not challenge the IJ's finding that they did not demonstrate eligibility for withholding of removal under the INA. Issues not argued on appeal are deemed waived. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n. 6 (11th Cir. 1989). Accordingly, the Mingkids have waived their claims for withholding of removal under the INA. See id.

5

The government contends that the Mingkids' case is nonjusticiable due to mootness. Before we address the Mingkids' arguments regarding the IJ's frivolity finding we first must resolve the issues of jurisdiction and justiciability.

## A. Jurisdiction and Justiciability

During oral arguments, we asked the parties to submit simultaneous letter briefs addressing whether the IJ's holding that the Mingkids' applications for asylum were time-barred deprived the IJ of authority, whether through a jurisdictional bar or otherwise, to further find that their applications for asylum were frivolous. Section 240 of the INA provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien" and that such a proceeding "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or . . . removed from the United States." INA § 240(a)(1) and (3), 8 U.S.C. § 1229a(a)(1) and (3). Furthermore, agency regulations provide that "Immigration Judges . . . shall exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation, removal, and asylum proceedings and such other proceedings which the Attorney General may assign them to conduct." 8 C.F.R. § 1003.10. The regulations further state that "[w]hen an Immigration Judge has jurisdiction over an underlying proceeding, sole jurisdiction over applications for asylum shall lie with the Immigration Judge." 8 C.F.R. § 1003.14(b).

6

Against the backdrop of these statutes and regulations, we find nothing, jurisdictional or otherwise, that divests an immigration judge of the authority to enter a ruling of frivolousness on an application for asylum that was found to be untimely. Indeed, such a prohibition conceivably could allow an alien to file an untimely application for asylum that contained deliberately fabricated material elements without fear of the sanctions associated with a frivolity determination. Such a result was not what Congress intended when granted immigration judges the authority to determine if an application for asylum is frivolous. See INA § 208(d)(6), 8 U.S.C. § 1158(d)(6).

As to the justiciability of the Mingkids' petitions, the Attorney General contends that the IJ's frivolity determination is moot because the potential for harm is merely speculative. Specifically, the Attorney General argues that the Mingkids' petitions concerning solely the IJ's frivolity determination have no effect on either the removal order or the denial of relief. Thus, the Attorney General claims, there is only a speculative possibility that the frivolity finding may have some consequence on the Mingkids should they apply for some benefit under the INA in the future.

We have jurisdiction to determine our jurisdiction under the INA. Cunningham v. U.S. Att'y Gen., 335 F.3d 1262, 1266 (11th Cir. 2003) (per curiam). "Article III of the Constitution limits the jurisdiction of the federal courts

7

to the consideration of 'Cases' and 'Controversies.'" <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam) (citing U.S. Const. art. III, § 2). "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" <u>Id.</u> (citation omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Id.</u> at 1335-36 (citation omitted, alteration in original). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" <u>Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health & Rehab. Servs.</u>, 225 F.3d 1208, 1217 (11th Cir. 2000) (citation omitted, alteration in original).

Here, we have the power to grant meaningful relief. This is not a case where our holding would be merely advisory or events that occurred subsequent to the initiation of the litigation deprive us of the ability to give the Mingkids meaningful relief. <u>Cf.</u> <u>Al Najjar</u>, 273 F.3d at 1337 (per curiam) (discussing the dramatically changed circumstances since the petitioner's initial request for bond). Our ability to vacate the frivolity finding is relief we can provide immediately. The Attorney General argues that the frivolous finding will not have any effect given that petitioners have been ordered removed and are thus inadmissible to the United States for ten years. Even then, the Attorney General asserts, it is only a

possibility that the determination may have any consequence on the Mingkids as there are other factors that would be considered in reviewing their request for a benefit under the INA. But the Attorney General's contention misconstrues the applicability of the mootness doctrine. The Mingkids currently have a frivolity determination against them. Often referred to as the "death sentence" for an alien's immigration prospects, vacating such a determination incontrovertibly leaves them in better position than they would be in without our relief.[2] We now turn to the substance of the Mingkids' petition.

B. Frivolity

Although the Mingkids concede that their hearing testimony contains minor inconsistencies, they argue that the inconsistencies are too minor to satisfy the threshold for a frivolity determination. They contend that the IJ failed to specifically find that they deliberately fabricated a material element of their applications for asylum. The Mingkids further argue that the record is unclear as to whether they were notified of their inconsistencies and given an opportunity to explain any discrepancies.

Our jurisdiction to review final orders by the BIA is governed by § 242 of

---

[2] See Liu v. U.S. Dep't of Justice, 455 F.3d 106, 112, 117 (2d Cir. 2006) (citing Muhanna v. Gonzales, 399 F.3d 582, 588 (3d Cir. 2005)) (discussing a frivolity determination's foreclosure from all benefits, with the exception of some temporary protections such as withholding of removal, under United States immigration laws).

the INA, 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 119 Stat. 231. We review only the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citations omitted). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, since the BIA expressly adopted and affirmed the IJ's frivolity determination, we review the IJ's analysis as if it were the BIA's. See id.

"We review de novo the statutory interpretation finding by the [BIA] that [the petitioner] filed a frivolous asylum application under Section 1158(d)(6)." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1338 (11th Cir. 2001) (citations omitted). This review, however, "is tempered with deference to the [BIA]." See id. "If the Attorney General determines that an alien has knowingly made a frivolous application for asylum . . . the alien shall be permanently ineligible for any benefits under this chapter [of the INA]." INA § 208(d)(6), 8 U.S.C. § 1158(d)(6). The regulations provide:

> [A]n asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the [IJ] or the [BIA] is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

8 C.F.R. § 208.20.

"Because the consequences of a finding of frivolousness are so severe, 8

10

C.F.R. § 208.20 delineates a specific framework the IJ must follow before making such a finding." Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1317 (11th Cir. 2006). "The IJ must first find material aspects of the alien's asylum application were demonstrably false and such fabrications were knowingly and deliberately made." Id. (citations omitted). Also, "[t]he alien must then be given ample opportunity during his hearing to address and account for any deliberate, material fabrications upon which the IJ may base a finding of frivolousness." Id.

We conclude that the IJ and BIA failed to make the necessary findings to establish frivolity and failed to provide the Mingkids sufficient opportunity to address and account for the inconsistencies upon which the IJ based his finding of frivolousness. See id. The IJ's decision fails to sufficiently discuss any material element of their asylum application that was deliberately fabricated. In fact, the IJ noted that "when the respondents were testifying about the things that were written in their applications for asylum, one might say while they were on script, their testimony seemed to be pretty good and consistent. It was only when you got them to talk about things that were not in the applications for asylum . . . that we find numerous unexplainable discrepancies." R at 54.

The IJ conceded that many discrepancies "[do not] go directly to the specific incidents they testified about as being the reason they [we]re requesting asylum." Id. at 64-65. Perhaps as a result of this concession, when determining that the

11

applications for asylum were frivolous, the IJ chose to specifically discuss in detail only a few of the inconsistencies he noted earlier in his opinion. Particularly, the IJ focused on the Mingkids' different testimony regarding their father's occupation and their relationship to a cousin purportedly burned by Muslims. Also, the IJ referenced discrepancies surrounding who the brothers lived with in Indonesia and where their grandparents resided. In what appears to be recognition of the need to bolster his reasoning, the IJ's conclusion that the applications were frivolous incorporated "[a]ll the[] inconsistencies" he discussed in making his adverse credibility determination. Id. at 65. As we held in Scheerer, however, more than an adverse credibility finding is needed to support a finding of frivolousness. 445 F.3d at 1318; see also Muhanna, 399 F.3d at 589 (concluding the frivolity determination was not based on a thorough examination of the asylum application but instead on the assessment of the petitioners credibility when testifying).[3] Even assuming that the IJ believed all of the inconsistencies he noted to be "material" for the purposes of the frivolity determination, the IJ did not make the sufficiently specific findings required by 8 C.F.R. § 208.20 as to which material elements of the Mingkids' applications for asylum were deliberately fabricated.

Additionally, the IJ failed to provide the Mingkids a "'sufficient opportunity to account for' the specific concerns upon which the finding of frivolity rests." See

_____

[3] It should be noted that the IJ's decision predated our Scheerer opinion.

12

Kifleyesus v. Gonzales, 462 F.3d 937, 944 (8th Cir. 2006) (citations omitted). In

Efe v. Ashcroft, the Fifth Circuit noted that the petitioner went "back and forth

with the facts and misrepresented his case several times" and "failed to take

advantage of ample opportunity to clarify his contradictory testimony." 293 F.3d

899, 908 (5th Cir. 2002). In contrast, here, rather than each brother creating

discrepancies from his own testimony or his own application, most of the

inconsistencies the IJ found only arose from a comparison of the two brothers'

answers after both had finished testifying. The IJ failed to bring all the

discrepancies he believed had risen to the level of knowing fabrications of a

material element of their applications for asylum to each brother's attention so the

Mingkids could receive an adequate opportunity to address all the inconsistencies

the IJ relied on in making his frivolity determination. See Farah v. Ashcroft, 348

F.3d 1153, 1156-58 (9th Cir. 2003); Liu, 455 F.3d at 113-14.

### III. CONCLUSION

Having found that the IJ was within his authority to make a frivolity

determination and that we have power to afford meaningful relief, we grant the

petition for review pertaining to the frivolity determination. The absence of a

proper opportunity for the Mingkids to explain the discrepancies in the record,

along with the dearth of specific findings required by 8 C.F.R. § 208.20 as to

which material elements of the Mingkids' applications for asylum were knowingly

13

fabricated, requires us to vacate the finding that the applications were frivolous. We remand this case to the BIA for further proceedings consistent with this opinion.

**PETITIONS GRANTED, ORDER VACATED IN PART, AND REMANDED.**