[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12562
Non-Argument Calendar

_____

D.C. Docket No. 7:12-cr-00292-CLS-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOMINGO BEIZA-HERNANDEZ,
a.k.a. Domingo Beiza Hernandez,
a.k.a. Domingo B. Hernandez,
a.k.a. Daniel Dias Duran,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 28, 2014)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Domingo Beiza-Hernandez appeals his sentence of time served after pleading guilty to illegal reentry into the United States by a deported alien, in violation of 8 U.S.C. § 1326(a).  On appeal, he challenges the District Court's application of an eight-level increase to his offense level based on the court's finding that his prior North Carolina conviction of possession with intent to sell or deliver more than 28 but less than 200 grams of cocaine (the "North Carolina offense"), for which he was sentenced to 8 to 10 months' imprisonment, qualified as an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C).  He argues that the district court erred in treating the North Carolina offense as an aggravated felony because, under North Carolina's then-mandatory sentencing scheme, he could not have received a sentence in excess of 12 months' imprisonment.  In addition to arguing that the North Carolina offense qualified as an aggravated felony, the government argues that Beiza-Hernandez's appeal is moot because he has already served his sentence of imprisonment and been removed from the United States.

## I.

We review whether a case is moot *de novo*.  *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008).  Before assuming jurisdiction over any case, we must resolve any question of mootness.  *Id.*

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'"  *Id.*  "[A]n action that is moot

2

cannot be characterized as an active case or controversy. A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (quotations, alterations, and citation omitted). "The fundamental question with respect to mootness is whether events have occurred subsequent to the filing of an appeal that deprive the court of the ability to give the appellant meaningful relief." *Al-Arian*, 514 F.3d at 1189 (quotations, alterations, and ellipses omitted). We recognize three general exceptions to the mootness doctrine: "(1) the issues are capable of repetition, yet evading review; (2) an appellant has taken all steps necessary to perfect the appeal and to preserve the status quo; and (3) the trial court's order will have possible collateral legal consequences." *Wakefield v. Church of Scientology of Cal.*, 938 F.2d 1226, 1229 (11th Cir. 1991). In *United States v. Farmer*, 923 F.2d 1557, 1568 (11th Cir. 1991), an appeal raising sentencing issues, we held the appeal moot because the appellant had completed his sentence and advanced no argument that there may be other benefits in having his sentence reduced.

Under the Immigration and Nationality Act ("INA"), an alien may avoid removal from the United States and adjust his status to that of an alien lawfully admitted for permanent residence if the alien: (1) "has been physically present in the United States for a continuous period of not less than 10 years immediately

3

preceding the date of such application"; (2) "has been a person of good moral character during such period"; (3) "has not been convicted of an offense under [8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3)]"; and (4) "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). An alien convicted of a violation of "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance" is inadmissible and ineligible for cancellation of removal.  8 U.S.C. § 1182(a)(2)(A)(i)(II); *see* INA § 240A(b)(1)(C), 8 U.S.C. § 1229b(b)(1)(C).  An alien is also ineligible for cancellation of removal if he is convicted of an aggravated felony after admission. 8 U.S.C. § 1227(a)(2)(A)(iii); *see* INA § 240A(b)(1)(C), 8 U.S.C. § 1229b(b)(1)(C).

In *United States v. Orrega*, we held that that the government's appeal of an alien's sentence was not rendered moot by his removal from the country.  363 F.3d 1093, 1095-96 (11th Cir. 2004).  There continued to be an active controversy in the case because Orrega might, at some point, reenter the United States.  *Id.* at 1095. We noted that "[a]lthough not dispositive, this possibility of re-entry is made more likely by the fact that Orrega lived in the United States for most of his life, and his entire family is in this country."  *Id.* at 1095 n.2.  Even though the possibility of

4

reentry was speculative, it prevented the government's appeal from being moot. *Id.*

In *Mingkid v. U.S. Att'y Gen.*, we reviewed a Board of Immigration Appeals ("BIA") decision that concluded, in relevant part, that the Mingkids' applications for asylum were frivolous. 468 F.3d 763, 767 (11th Cir. 2006). On appeal, the government argued that we lacked the power to grant the Mingkids meaningful relief as to this issue because reversing the frivolity determination would not have any effect given that the Mingkids had already been ordered removed on other grounds and were thus inadmissible to the United States. *Id.* at 768. The government claimed that the issue was moot because there was only a speculative possibility that the frivolity finding would have consequence if the Mingkids applied for some future benefit under the INA. *Id.* We held that the issue was not moot because "vacating such a determination incontrovertibly leaves [the Mingkids] in better position than they would be in without our relief." *Id.* at 768-69.

Beiza-Hernandez's removal after the completion of his sentence did not moot the sentencing issue raised in this appeal. There continues to be an active controversy in this case because Beiza-Hernandez may, at some point in the future, reenter the United States. This possibility, while speculative, is made more likely by the fact that he has lived in the United States since he was eight years old and

5

has a number of family members currently living in the United States. *See Orrega*, 363 F.3d at 1095 n.2. Moreover, we have the power to grant Beiza-Hernandez meaningful relief. The record currently contains a finding that his North Carolina offense constituted an aggravated felony. If he applies for any relief under the INA, this finding will have consequences, such as making him ineligible for cancellation of removal; and vacating this decision would undoubtedly leave him in a better position than he would be without relief. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b(b)(1)(C). Avoiding the mootness doctrine does not require that he show that he would necessarily succeed in obtaining cancellation but only that the judgment in this case has possible collateral legal consequences, such as impacting future proceedings under the INA. *See Wakefield*, 938 F.2d at 1229.

## II.

We review a district court's application of the Sentencing Guidelines *de novo*. *United States v. Aldrich*, 566 F.3d 976, 977 n.2 (11th Cir. 2009). The interpretation of criminal statutes is a question of law that we also review *de novo*. *United States v. Murrell*, 368 F.3d 1283, 1285 (11th Cir. 2004).

The Sentencing Guidelines mandate an eight-level increase to a defendant's offense level for the crime of unlawfully entering or remaining in the United States if he was deported or unlawfully remained here after a conviction for an

6

aggravated felony.  U.S.S.G. § 2L1.2(b)(1)(C).  The application notes to § 2L1.2 include a definition of "felony," which requires that the federal, state, or local offense be punishable by a term of imprisonment exceeding one year, but this definition specifically does not apply to subsection (b)(1)(C).  *See id.* § 2L1.2, comment. (n.2).  For the purposes of applying this sentencing guideline, "aggravated felony" has the meaning assigned in 8 U.S.C. § 1101(a)(43).  *Id.* § 2L1.2, comment. (n.3(A)).  Section 1101(a)(43) defines an aggravated felony as, among other things, "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in [18 U.S.C. § 924(c)])."  8 U.S.C. § 1101(a)(43)(B).  Cocaine is a schedule II controlled substance.  *See* 21 U.S.C. §§ 802(6), 812(c).  Section 924(c) defines a "drug trafficking crime" as any felony punishable under the Controlled Substances Act ("CSA").  18 U.S.C. § 924(c)(2).  In general, a felony is any crime for which the maximum term of imprisonment authorized is greater than one year.  *See* 18 U.S.C. § 3559(a).

In *Lopez v. Gonzalez*, 549 U.S. 47, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006), the Supreme Court addressed the question of "whether conduct made a felony under state law but a misdemeanor under the [CSA] is a 'felony punishable under the [CSA].'"  *Id.* at 50, 127 S.Ct. at 627 (quoting 18 U.S.C. § 924(c)(2)).  Lopez received a sentence of five years' imprisonment for the state offense of aiding and

abetting another person's possession of cocaine. *Id.* at 51, 127 S.Ct. at 628. The government began removal proceedings against Lopez and alleged, in relevant part, that his state conviction qualified as an aggravated felony. *Id.* The Supreme Court noted that mere possession of cocaine was not a felony under the CSA. *Id.* at 53, 127 S.Ct. at 629. The Supreme Court stated that to determine which state offenses qualified as felonies punishable under the CSA, the proper place to look was to the CSA's definitions of crimes punishable as felonies. *Id.* at 55, 127 S.Ct. at 630. The Court's analysis confirmed "that a state offense whose elements include the elements of a felony punishable under the CSA is an aggravated felony." *Id.* at 57, 127 S.Ct. at 631. "[T]he crimes the CSA defines as 'felonies' are those crimes to which it assigns a punishment exceeding one year's imprisonment." *Id.* at 56 n.7, 127 S.Ct. at 631 n.7. As applied to Lopez, the government's reliance on the greater-than-one-year sentence under state law to define the crime as an aggravated felony was misplaced. *Id.* at 57, 127 S.Ct. at 632.

Under North Carolina law, it is a crime to "possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a)(1). "Deliver" means "the actual constructive, or attempted transfer from one person to another of a controlled substance." *Id.* § 90-87(7).

The CSA prohibits knowingly or intentionally possessing "with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Under the CSA, "distribute" means "to deliver . . . a controlled substance," and "deliver" means "the actual, constructive, or attempted transfer of a controlled substance." *Id.* § 802(8), (11). The maximum statutory penalty for possession with intent to distribute any amount of cocaine less than 500 grams is 20 years' imprisonment. *Id.* § 841(b)(1)(C).

The District Court did not err in finding that Beiza-Hernandez's North Carolina offense qualified as an aggravated felony. The parties do not dispute that Beiza-Hernandez was deported in 2008, four years after his conviction for that offense. Regardless of the sentence he could have received under North Carolina law, the relevant inquiry remains whether the state offense of which he was convicted qualifies as an aggravated felony because it contains elements punishable under the CSA by a term of imprisonment exceeding one year. *See Lopez*, 549 U.S. at 56 n.7, 57, 127 S.Ct. at 631 & n.7. The elements of the North Carolina offense mirror the elements of possession with intent to distribute under the CSA. Both offenses require proof that a defendant possessed with the intent to deliver or distribute a controlled substance, and they use virtually identical definitions for the terms deliver and distribute, the only relevant terms that are not repeated verbatim in both statutes. *Compare* N.C. Gen. Stat. §§ 90-95(a)(1) (using

9

term "deliver"), 90-87(7), *with* 21 U.S.C. §§ 802(8), (11), 841(a)(1) (using term "distribute").  Thus, Beiza-Hernandez's North Carolina offense qualifies as a felony punishable under the CSA, a drug-trafficking crime as defined in 18 U.S.C. § 924(c), and an aggravated felony under 8 U.S.C. § 1101(a)(43).  Accordingly, the district court properly applied an eight-level increase to Beiza-Hernandez's offense level based on the fact that he had been deported following the commission of an aggravated felony.  *See* U.S.S.G. § 2L1.2(b)(1)(C).  Beiza-Hernandez's conviction is, accordingly,

AFFIRMED.