[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14703

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 18, 2008
THOMAS K. KAHN
CLERK

BIA Nos. A-95-367-438 & A-97-935-283

NIKOLY MOREHODOV,
OKSANA MOREHODOV,

                                        Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                        Respondent.

_____

Petition for Review of a Decision of
the Board of Immigration Appeals

_____

**(March 18, 2008)**

Before BLACK, HULL and FAY, Circuit Judges.

PER CURIAM:

Nikoly and Oksana Morehodov petition for review of the Board of Immigration Appeals' (BIA) affirmance of the Immigration Judge's (IJ) denial of their petition for asylum and withholding of removal. For the reasons set forth below, we grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.

## I. BACKGROUND

The Morehodovs, married citizens of Ukraine, arrived in this country separately. Nikoly left Ukraine in November 2000 and arrived in the United States via Canada in December of that year; he entered without inspection. He applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in July 2001. Oksana left the Ukraine and arrived in Miami, Florida in November 2002. In November 2003, Oksana applied for similar relief. The Immigration Court later consolidated the cases.

The Morehodovs are Baptists and alleged they faced persecution on account of their faith if returned to Ukraine. At the merits hearing before the IJ, the couple recounted a series of infrequent but substantial physical attacks they suffered while living in the town of Kherson, Ukraine from 1980 until their departure from the country. Additionally, they provided documentary evidence, including an affidavit from a purported expert on Ukraine detailing difficulties faced by

2

Baptists, medical records of their injuries from the attacks, articles describing the political situation in Ukraine, and Country Reports.

Nikoly testified that the first incident he experienced was during his baptism in September 1980. He said he was undergoing baptism when persons with sticks began to beat him seriously, striking him in the face; he and his companion had to retreat to the water to escape. They shouted at him, accusing him of worshiping the devil. Nikoly said they did not go to the police because it would have caused more problems.

Nikoly recalled another incident taking place in September 1997. He, Oksana and several others were returning from a prayer house when a group surrounded them and asked what they were preaching. The group then attacked them, hitting Nikoly on his head. Both he and his wife were taken to the hospital, where Oksana remained for three days. Medical records submitted by Nikoly confirm he was treated for cuts, bruises and a concussion after this attack.

Another attack took place in May 1998. Nikoly and a fellow Baptist were traveling on a train. Nikoly testified the pair were on the train speaking with nearby passengers about Christianity. After exiting the train, Nikoly and his companion were beaten, and his injured leg required stitches. The medical records indicate he was treated for head trauma and a stab wound to his right knee. He

also testified to another physical beating in February 1999, and the medical records he submitted confirmed he suffered from several cracked ribs. Nikoly conceded he never contacted the police after the attacks, but insisted the police would not provide protection.

Oksana testified to similar incidents. She testified to an incident in 1991; she and Nikoly were praying in church when six or seven men entered. They called the gathering a Satan's meeting and began to assault the church-goers. Oksana, who was pregnant, was severely beaten. She was hospitalized for several days and suffered a miscarriage. She also testified to the 1997 incident where her prayer group was assaulted, and medical records demonstrate she suffered a concussion. Oksana said they went to the police after the 1991 incident, but the police would not protect them.

The IJ denied their requests for asylum relief and withholding of removal, finding the Morehodovs failed to meet their burden of establishing refugee status. In so ruling, the IJ said the country conditions in Ukraine did not support the contention that the Morehodovs would be persecuted on account of their Baptist faith and they did not show the government would be unable or unwilling to protect them in the event of a fear of being harmed.

The IJ began its analysis by noting the Country Reports stated Ukraine was 90% Christian and that thousands of Baptists continued to practice their faith in the country. Turning to the Morehodovs' testimony, the IJ determined there was no evidence the attacks were motivated by religious beliefs. The IJ also said the couple had repeatedly testified they never went to the police, and so no police reports existed to verify a religiously-motivated attack. Because the IJ found the Morehodovs were ineligible for asylum, they were also ineligible for withholding of removal or CAT relief. The BIA affirmed without opinion the IJ's decision and adopted it as the final agency determination.

## II. STANDARD OF REVIEW

"When the BIA summarily affirms the IJ's decision without an opinion, the IJ's decision becomes the final removal order. We review the IJ's decision as if it were the Board's." *Alim v. Gonzales*, 446 F.3d 1239, 1254 (11th Cir. 2006) (citations and quotations omitted). Findings of fact are reviewed under the substantial evidence test, which requires we affirm the IJ unless the record compels a reasonable fact finder to find otherwise. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).

## III. DISCUSSION

To be eligible for asylum, an alien must establish status as a "refugee." *Sepulveda*, 401 F.3d at 1230. The statute defines "refugee" as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). Establishing refugee status merely makes an alien eligible for asylum, the granting of which is subject to the Attorney General's discretion. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

An alien may demonstrate status as a refugee primarily either by establishing well-founded fear of persecution or establishing past persecution, which gives rise to a rebuttable presumption of a well-founded fear. *See Sepulveda*, 401 F.3d at 1230-31. Past persecution exists when the alien establishes he has suffered persecution in the past in the relevant country on account of one of the protected grounds, and is unable or unwilling to return to, or avail himself of the protection of, the country in question. 8 C.F.R. § 208.13(b)(1). The government may then attempt to rebut the presumed well-founded fear that arises from the finding of past persecution by demonstrating either a fundamental

6

change in circumstances in the country or that the applicant could avoid future persecution by relocating to a different area of the country. *Id.* § 208.13(b)(1)(I).

Even if an alien does not establish past persecution, he can show a well-founded fear of future persecution if he shows there is an actual fear of persecution based on a protected ground, there is a reasonable possibility of being singled out for such persecution if returned to the country, and he is unable or unwilling to return to, or avail himself of the protection of, that country because of such fear.[1] *See id.* § 208.13(b)(2)(I); *see also Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007).

The actual persecution inquiry contains several salient steps in its analysis, and an alien's application for asylum may be infirm for any number of reasons. For example, the alien must show the purported persecution was (or would be) *on account of* a protected class; if substantial evidence supports an IJ's findings that an alien suffered particular harms for reasons other than his race, religion, nationality, membership in a particular social group, or political opinion, the petition for review will be denied. *See, e.g.*, *Scheerer v. U.S. Att'y Gen.*, 445 F.3d

---

[1] An alien need not demonstrate he would be singled out individually for persecution if he can demonstrate both a pattern or practice of persecution on account of a protected ground and membership in said protected category. *See* 8 C.F.R. § 208.13(b)(2)(iii).

1311, 1316 (11th Cir. 2006) (substantial evidence supported IJ's conclusion that applicant's prosecution in his home country was not due to his political opinion).

Or perhaps the application fails because the harmful acts suffered by the alien (or acts which the alien fears he will suffer) do not rise to the level of "persecution." Not all disquieting, distressing or deplorable behavior amounts to persecution, for persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290-91 (11th Cir. 2006) (quotations omitted) (finding alien's five-day detention did not, when unharmed, compel the conclusion he experienced past persecution).

No less important, albeit a concern which arises with less frequency in the reported cases, is the requirement either that the purported persecution be at the hands of the government of the home country or the government is unable or unwilling to control the group performing the persecutory acts. *See In re Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985) ("[H]arm or suffering ha[s] to be inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control."), *overruled in part on other grounds by In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). Thus, an application for asylum may fail if the applicant can show only difficulty by the

country in controlling private behavior and not true inability or unwillingness to protect the applicant. *See Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005) ("[T]he applicant must show that the government condoned [the persecution] or at least demonstrated a complete helplessness to protect the victims." (quotations omitted)). *See also Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007) (holding that BIA precedent does not require reporting an incident to authorities if "petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect her, and for that reason she could not rely on them"); *Ornelas-Chaves v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) (holding that an applicant need not be required to report incidents to authorities "if he can convincingly establish that doing so would have been futile or have subjected him to further abuse").

It is against this background that we review the IJ's decision. The IJ's decision began with a discussion of current country conditions before turning to review the Morehodovs' complained-of instances of past persecution. Because of the burden-shifting required by a finding of past persecution, we focus our discussion first on the Morehodovs' claims of past persecution. We read the IJ as making two primary findings in concluding the Morehodovs were not eligible for asylum: First, the IJ found the attacks they suffered were not the result of their

9

Baptist faith.  Second, the IJ found they had not established the government would be unable or unwilling to protect the Morehodovs from persecution.  We will discuss each finding in turn.

*A. Persecution "on Account of" Religion*

In discussing the testimony of both Nikoly and Oksana, the IJ found there was no evidence the beatings and attacks they suffered were on account of their Baptist faith.  The IJ noted Nikoly's testimony that he was beaten in 1980, 1997, and 1998, but said "there is no evidence that this was motivated by individuals who wanted to suppress their religious beliefs."  When discussing Oksana's testimony regarding the 1991 attack in the church, the IJ found there was no evidence the attack "was motivated because of the [Morehodovs'] religious beliefs."

We conclude the record compels a conclusion that the attacks described by the Morehodovs were the result of their Baptist faith.  We note the IJ found both Nikoly and Oksana credible, and we will not disturb this finding.  *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006).[2]  In light of the credibility

_____

[2] To be more precise, the IJ said "the Court would find that they have been overall credible, although there are some issues which the Court will address separately as to the motivation for some of the things that they have testified to before the Court."  Even if the IJ intended to find the Morehodovs' testimony regarding motivations incredible, she never returned to this point to provide specific, cogent reasons for doing so.  We will therefore treat the Morehodovs as fully credible.  *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir.

10

determination, the IJ's finding there was "no evidence" the attacks were motivated by the Morehodovs' Baptist faith cannot be sustained.

Both Nikoly's and Oksana's testimony is strong evidence their religious beliefs motivated several of the attacks. Nikoly testified the 1980 attack took place during his baptism, and the attackers accused him of engaging in devil worship during the attacks. According to Oksana's testimony, the 1991 attack–where she was beaten so severely she miscarried–took place in the Baptist church she and Nikoly attended. The attackers accused them of conducting a "Satan's meeting." Nikoly also testified that during the 1997 incident, the attackers asked the group what they were proselytizing and preaching before beating them. While Nikoly did not testify the attackers in the 1998 incident made anti-Baptist statements during the actual attack, he and his companion were attacked only moments after departing a train where they had engaged in a religious conversation with other passengers.

Yet the IJ engaged none of this testimony when she concluded there was "no evidence" to find the attacks were motivated by religion. Given the IJ's credibility determination and the repeated testimony by the Morehodovs detailing anti-Baptists statements made before and during the multiple attacks, the record

2006).

compels the conclusion the attacks on the Morehodovs were motivated by their Baptist faith.

*B. Governmental Inability or Unwillingness to Control*

The IJ's decision may still be affirmed if its finding that the Morehodovs failed to show governmental inability or unwillingness to control the groups which attacked the couple is supported by substantial evidence. Resolution of this issue is difficult, however, because the basis of the IJ's finding is not clear. The IJ did note the Morehodovs provided no police reports of their attacks, but evidently this mattered to the IJ only insofar as police reports would provide support as to the motivations for the attacks.

Moreover, the IJ flatly mischaracterizes the evidence. She found the Morehodovs had testified they never reported the incidents to the authorities. Specifically, the IJ found Oksana testified the 1991 incident was never reported and the police never notified. In fact, Oksana's testimony was directly contrary to the IJ's description. She stated she and Nikoly attempted to get protection from the police but the police were of no help. While neither applicant testified to contacting the police following any other incident, they did repeatedly state that going to the police would be futile and not result in protection. Additionally, the IJ ignored the affidavit of the Morehodovs' purported expert on Ukraine, which at

12

least attempts to assert the existence of indifference or possibly hostility towards Baptists by the government in the country.

In attempting to demonstrate past persecution, the applicant bears the burden of establishing the government was unable or unwilling to protect him from persecution. *See Ruiz*, 440 F.3d at 1257 (noting the applicant bears the burden of proving refugee status). Moreover, a failure to report persecution to local authorities can be fatal to an asylum claim, unless an applicant convincingly demonstrates the authorities would have been unable or unwilling to protect her. *Lopez*, 504 F.3d at 1345. In this case, we simply cannot say whether the IJ's finding regarding governmental unwillingness and inability is supported by substantial evidence, because what little reasoning the IJ provided on this matter mischaracterizes certain evidence and ignores other evidence. While Oksana testified they went to the authorities in 1991, we are unsure whether such a dated attempt to seek protection from governmental authorities, without evidence that they sought out the police after the later, more recent attacks, is sufficient to find they have demonstrated governmental inability or unwillingness to protect them. We also cannot meaningfully assess the effect of their expert affidavit without further explanation from the IJ. "[T]he general practice in this circuit is to remand when the IJ . . . fails to make adequate findings or give reasoned consideration to

all the evidence." *Sanchez Jimenez*, 492 F.3d at 1237 (quotations omitted). Therefore, we think it appropriate in this case to remand to the IJ for a full consideration on the issue of whether the Morehodovs met their burden of demonstrating the Ukrainian government and police forces were unwilling or unable to protect them.

### IV. CONCLUSION

Because we find the record compels the conclusion that the attacks were motivated by the Morehodovs' Baptist faith and the IJ's finding on governmental acquiescence was insufficient, we grant the petition for review, reverse the IJ, and remand for further determination of the asylum and withholding of removal claims.[3] If the IJ finds the Morehodovs have established past persecution, the IJ should then reassess its discussion of current country conditions in light of the burden-shifting required by the regulations.[4]

**GRANTED**, **REVERSED IN PART** and **REMANDED**.

---

[3] Although the Morehodovs stated the law applicable to CAT claims in their brief, they did not argue for CAT relief. We consider their CAT claim waived. *See Sepulveda*, 401 F.3d at 1228 n.2.

[4] We decline to address whether the IJ's finding that current country conditions do not support a well-founded fear of persecution is supported by substantial evidence, as it is not necessary to our disposition of this appeal. Of course, if the IJ finds the Morehodovs did not establish past persecution, they are not entitled to a rebuttable presumption of a well-founded fear of persecution.