[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16431
Non-Argument Calendar

_____

Agency No. A079-429-213

AMMAR ABBAS ABDALLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 27, 2009)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Ammar Abbas Abdalla, a citizen of Sudan who was born and raised in Egypt, petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying him asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition for review.

## I. BACKGROUND

Abdalla claims he suffered past persecution and has a well-founded fear of future persecution in Sudan. Abdalla's persecution claims rest on a trip he says he took with his father to Sudan in 1990. According to Abdalla, he and his father were detained by Sudanese officials at the airport upon their arrival. Sudanese officials took them in handcuffs and blindfolds to another location where they were held for a period of days and beaten and interrogated because the Sudanese officials believed Abdalla's father had cooperated with southern rebels in Darfur. Abdalla says that when he and his father were released, they immediately returned to Egypt.

On October 22, 2000, Abdalla entered the United States on a nonimmigrant visa with authorization to remain until December 24, 2001. On November 5, 2001, Abdalla filed his asylum application and a personal statement indicating that he feared he would be killed or imprisoned for refusing to serve in the Sudanese

military.  The asylum application and personal statement did not mention a 1990 trip to Sudan.

In October 2003, the Department of Homeland Security issued a Notice to Appear charging Abdalla with overstaying his visa.  At an initial hearing, Abdalla conceded removability and renewed his application for asylum, withholding of removal and CAT relief.

Later, Abdalla submitted two additional personal statements in which he described his 1990 trip to Sudan with his father and their detention and mistreatment at the hands of Sudanese officials.  Abdalla also submitted three medical reports, some photographs which he asserted showed his injuries suffered in Sudan, his birth certificate, his passport, death certificates for his parents, a picture of him with his father, and 79 reports and newspaper articles related to conditions in Sudan and Egypt.  The administrative record also included the State Department's 2005 Country Reports on Human Rights Practices for Sudan and 2006 Country Reports on Human Rights Practices for Egypt.

At the asylum hearing, Abdalla testified in detail about his 1990 trip to Sudan with his father and their detention and mistreatment by Sudanese security officials.  Judith Barnes, the asylum officer who conducted Abdalla's initial asylum interview, also testified.  According to Barnes, Abdalla told her that, although he held a Sudanese passport, he was born and raised in Egypt and had

3

never visited or lived in Sudan. Abdalla indicated to Barnes that he was seeking asylum because Egyptian authorities had told him that he needed to get his Sudanese passport renewed and that he feared that, in order to do so, he would be forced to serve in the Sudanese military. Abdalla told Barnes he had not suffered any physical harm before coming to the United States.

Following the hearing, the IJ found Abdalla not credible and denied all requested relief. Specifically, the IJ found that Abdalla's "claim [was] fraught with inconsistencies and glaring omissions" and that Abdalla "appear[ed] to have embellished his story with repeated telling." The IJ pointed out that although Abdalla testified at the hearing that he and his father were detained and tortured in Sudan, Abdalla did not mention this incident in his asylum application, his first personal statement or his initial asylum interview with Barnes. The IJ also identified numerous inconsistencies between Abdalla's hearing testimony and his second and third personal statements as to the details of the 1990 trip to Sudan, such as: (1) Abdalla's reasons for accompanying his father to Sudan; (2) the date of their trip to Sudan; (3) the precise details of his and his father's mistreatment by Sudanese officials; and (4) the length of their detention in Sudan.

The IJ also found that Abdalla had not submitted reliable corroborating evidence. The IJ gave only "diminished weight" to the foreign medical reports because, inter alia, (1) the reports were unauthenticated and only reported the

4

patient's complaints without any independent medical analysis; and (2) Abdalla had not provided information as to the doctors' identities or qualifications or made the doctors available for cross-examination. The IJ found that the pictures of Abdalla's body showed only skin discoloration and not scars as he claimed, which did not suggest the kind of torture Abdalla described. The IJ also pointed out that Abdalla's passport did not indicate that he had ever been to Sudan. The IJ determined that the only evidence that Abdalla had been persecuted in Sudan was his own testimony and statements, which the IJ found not credible. Thus, the IJ concluded that Abdalla had not shown past persecution or a well-founded fear of future persecution.

Abdalla appealed to the BIA, challenging the IJ's credibility finding. The BIA concluded that the IJ's adverse credibility finding was not clearly erroneous and affirmed the IJ's decision. The BIA noted that although Abdalla had testified that he and his father were detained, beaten and tortured in Sudan, Abdalla did not mention this incident in his asylum application, his first personal statement or his asylum interview with Barnes and that Abdalla's explanations for this inconsistency was not convincing. The BIA also rejected Abdalla's argument that the IJ's credibility finding was an implicit frivolity determination for which the IJ had failed to follow the proper procedures. Abdalla filed this petition for review.

## II. DISCUSSION

5

On appeal, Abdalla argues that the IJ's adverse credibility finding is not supported by substantial evidence.[1]  An asylum applicant has the burden to show, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution.  Forgue, 401 F.3d at 1286-87.  If the IJ finds an asylum applicant not credible, the IJ must make an explicit adverse credibility finding and offer "specific, cogent reasons" for the finding.  Id. at 1287.  "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments."  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006).[2]  Although uncorroborated but credible testimony may be sufficient to demonstrate asylum eligibility, "[t]he weaker an applicant's testimony, . . .the greater the need for corroborative evidence."  Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's

_____

[1]Where, as here, the BIA adopts the IJ's reasoning, we review the IJ's and the BIA's decisions.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Credibility determinations are reviewed under the substantial evidence test, and we will overturn them only if the record compels it.  Forgue v U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005).

[2]The REAL ID Act of 2005 amended the Immigration and Nationality Act ("INA") to permit an adverse credibility determination based on inconsistencies that do not go "to the heart of the applicant's claim."  See Pub. L. No. 109-13, § 101(a)(3), (d)(4)(C), 119 Stat. 231, 303, 304-05 (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C) (effective May 11, 2005).  Because Abdalla's application was filed before May 11, 2005, the REAL ID Act's changes do not apply to his claims.  Nonetheless, we need not resolve whether adverse credibility determinations in pre-REAL ID Act cases must go to the heart of the claim because the inconsistencies identified by the IJ and the BIA in this case relate directly to Abdalla's claims of persecution.

credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue, 401 F.3d at 1287.

Here, the IJ and the BIA gave specific, cogent reasons for finding Abdalla not credible, and those reasons are supported by the record. Specifically, the IJ and the BIA both pointed out that, although Abdalla testified at the hearing that he and his father had been detained, interrogated and beaten during a 1990 visit to Sudan, he failed to mention this incident in his asylum application or his first personal statement or his asylum interview with Barnes. Instead, during his asylum interview, Abdalla denied ever visiting Sudan and claimed he had not been physically harmed before arriving in the United States. Although Abdalla explained that a friend advised him not to mention the 1990 Sudan incident in his application or interview, we cannot say the explanation compels the conclusion that his other testimony about Sudan is credible.

Furthermore, Abdalla's explanation does not address the other inconsistencies the IJ noted between Abdalla's hearing testimony and his second and third personal statements as to what happened during the 1990 Sudan trip. For instance, although Abdalla testified that Sudanese officials hit him while they traveled in the car from the airport to the place of detention, he did not include this fact in his second or third personal statements. Abdalla's second personal

7

statement indicated that his father was strip searched and then severely beaten in front of him, facts not mentioned in his third personal statement or at the hearing.

Abdalla's story also changed with regard to precisely how he was mistreated. For example, Abdalla's second personal statement did not mention any electrical shocks. His third personal statement indicated that Abdalla received electrical shocks on two separate days. However, Abdalla testified at the hearing that he was shocked only on the fifth day. Similarly, the manner in which he claimed to have been tied up while being beaten and shocked changed. In his third personal statement, he was suspended from the ceiling with his torso and head on the floor. At the hearing, Abdalla said he was suspended by his right leg and the rest of his body lay on the floor. In his second personal statement, he was tied by his right leg; in his third personal statement, he was tied by his right hand and left ankle; and at the hearing he said he was tied by his arms and legs.

Abdalla was also inconsistent about when and why he went to Sudan and how long he stayed. According to Abdalla's third personal statement, Abdalla traveled to Sudan to settle permanently. He arrived in Sudan on January 17, 1990 and left five days later, on January 22, 1990. However, Abdalla testified at the hearing that he only planned to visit Sudan, arrived on December 17, 1990 and was then was detained for 37 days.

For all of these reasons cumulatively, substantial evidence supports the IJ's adverse credibility finding.[3] Furthermore, Abdalla does not argue that the other evidence in the record, alone, compels a conclusion that he was persecuted or has a well-founded fear of future persecution. Because Abdalla failed to establish eligibility for asylum, he likewise failed to establish eligibility for withholding of removal and CAT relief. See Al Najjar, 257 F.3d at 1292-93, 1302-04.

**PETITION DENIED.**

_____

[3]Although these inconsistencies are sufficient to support the IJ's adverse credibility finding, we also reject Abdalla's challenge to the IJ's finding that Abdalla's documentary evidence was not sufficiently corroborative. The IJ's decision to give little weight to Abdalla's medical reports and photographs is supported by substantial evidence. We also find no merit to Abdalla's argument that the IJ's adverse credibility finding constituted an implicit frivolity finding pursuant to 8 U.S.C. § 1158(d)(6) and 8 C.F.R. § 1208.20. See Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1317-18 (11th Cir. 2006) (concluding that an adverse credibility finding does not equate to a finding that an asylum application is frivolous). Accordingly, the IJ did not deprive Abdalla of due process by failing to follow the procedures for making such a finding.