[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-15445 &10-12234
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 2, 2011
JOHN LEY
CLERK

Agency Nos. A079-433-307,

A079-161-267


PAULIN GJERKAJ,
a.k.a. Manushan Alla,
MIMOZA GJERKAJ,
RENATA GJERKAJ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(February 2, 2011)

Before TJOFLAT, EDMONDSON and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner Paulin Gjerkaj ("Gjerkaj"), his wife, Mimoza, and their daughter, Renata, natives and citizens of Albania, petition this court to review two orders of the Board of Immigration Appeals ("BIA"): (1) the BIA's October 13, 2009 order dismissing petitioners' appeal of the decision of an Immigration Judge ("IJ") denying petitioners' applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA")[1] and ordering petitioners' removal, and (2) the BIA's May 10, 2010 order denying petitioners' motion to reopen the removal proceedings to allow the IJ to reconsider their applications for asylum.

Gjerkaj, as lead petitioner,[2] presents three issues in briefing these consolidated petitions for review: whether substantial evidence supports (1) the IJ's and the BIA's adverse credibility findings regarding his testimony and (2) the IJ's and BIA's alternative holding that petitioners failed to establish past persecution or a well-founded fear of future persecution on account of political

---

[1] Petitioners also seek review of the denial of their application for protection under the U.N. Convention Against Torture ("CAT"). In their appeal of the IJ's decision to the BIA, petitioners did not challenge the IJ's denial of CAT relief. Petitioners therefore failed to exhaust their administrative remedies as to the IJ's CAT ruling and precluded this court from considering the ruling. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249-51 (11th Cir. 2006). We accordingly dismiss the petition to the extent that it seeks review of the agency's denial of CAT relief.

[2] The BIA treated Gjerkaj as lead petitioner; we do likewise.

2

opinion, and (3) whether the BIA abused its discretion in denying petitioners' motion to reopen the removal proceedings.

I.

A.

The first two issues are presented in the petition to review the BIA's October 13, 2009 order dismissing petitioners' appeal of the IJ's removal order. When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Although the BIA in this case did not expressly adopt the IJ's decision, it did rely on the IJ's finding that Paulin Gjerkaj's testimony was not credible in reaching its decision to dismiss petitioners' appeal. We accordingly review both the IJ's and BIA's decisions. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009).

To the extent that these decisions were based on a legal determination, our review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247 (11th Cir. 2001). The factual findings, including credibility and those underpinning asylum eligibility, on which the agency's legal determinations are based are reviewed under the "substantial evidence test." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009). We affirm the agency's decisions if they are

3

supported by reasonable, substantial, and probative evidence of record. *Al Najjar*, 257 F.3d at 1284. This standard is "highly deferential." Thus, we reverse only "if the evidence compels a reasonable fact finder to find otherwise." *Kueviakoe*, 567 F.3d at 1304 (quotation omitted); *Al Najjar*, 257 F.3d at 1284. Under this test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). The fact that evidence may support a finding contrary to the agency's finding is not enough to justify a reversal. *Id.*

Adverse credibility determinations must be made explicitly. *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that the IJ must make "clean determinations of credibility."). "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (citations omitted).

An alien's testimony, if found to be credible, may be sufficient to establish the alien's eligibility to asylum. *Kueviakoe*, 567 F.3d at 1304. By the same token, an alien's testimony, if found to be not credible, may be sufficient to deny the

alien's eligibility to asylum. *Id.* at 1304-05.

An alien may qualify for asylum by presenting credible evidence showing "(1) past persecution on account of her political opinion or any other protected ground, or (2) a 'well-founded fear' that her political opinion or any other protected ground will cause future persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, [and] mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotation marks and citations omitted); *see also Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168 (11th Cir. 2008) (concluding that 36-hour detention, beating, and threat of arrest did not amount to persecution); *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237-38 (11th Cir. 2006) (threatening note, anonymous threatening phone calls, and being shot at by unknown assailants were insufficient to show past persecution based on political opinion).

Moreover, "evidence that either is consistent with acts of private violence or . . . that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006). Protected grounds are race, religion, nationality, membership in a particular social group, or political

opinion. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). If substantial evidence supports the finding that an alien suffered particular harms for reasons other than race, religion, nationality, *etc.*, then the petition for review will be denied. *See, e.g.*, *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1316 (11th Cir. 2006).

If the petitioner demonstrates past persecution, there is a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R § 208.13(b)(1). If he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. *Al Najjar*, 257 F.3d at 1289.

An applicant may qualify for asylum even without establishing a well-founded fear of future persecution if "(A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or (B) The applicant has established that there is a reasonable probability that he or she may suffer other serious harm upon removal to that country." *Mehmeti v. United States Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)). But, this form of relief requires an applicant to show "severe harm" and "long-lasting effects," and is reserved "for the most extraordinary cases." *Id.* at 1200-01

(collecting cases from other Circuits).

An alien seeking withholding of removal under the INA similarly must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Ruiz*, 440 at 1257. The burden of proof for withholding of removal, however, is "more likely than not," and, thus, is "more stringent" than the standard for granting asylum. *Sepulveda*, 401 F.3d at 1232.

With the foregoing principles in hand, we turn to the two issues the petition for review of the BIA's October 13, 2009 order presents: they concern (1) the credibility of Paulin Gjerkaj's testimony, and (2) petitioner's persecution on account of political opinion.

B.

We begin by focusing on the three incidents that, according to Paulin Gjerkaj's testimony, supported petitioners' applications for asylum and withholding of removal. The first incident took place in 1985, after Gjerkaj asked, at a public youth forum, why Albania didn't "have religious places like everybody else in the world." The police came to his home, accused him of spreading propaganda against the Communist Party, and arrested him. He was sentenced to

prison without a trial; five years later he was released.

In 1992, he joined the Christian-Democratic Party due to his anti-Communist political views; his wife and father also joined the Party. In 1997, two masked men physically assaulted him and threatened to kill him if he continued his political activities against the ruling Socialist Party. A second incident occurred the same year; he was involved in an argument and fighting that occurred at a newsstand. He described the incident in a statement appended to his asylum application. At some point that year, he went into hiding fearing for his life.

In June 1998, Gjerkaj's father was murdered "execution style" in front of his house, and Gjerkaj came out of hiding to attend the funeral. He believed that the members of the Socialist Party had committed the murder. Shortly after his father's death, he was detained for 78 hours. Someone told him that the Socialists caused his detention because of his political activities. Following his release, he again went into hiding, and stayed in hiding for nearly four years, until he came to the United States in January 2002. He said that he left Albania due to his and his family's mistreatment on account of their membership in the Christian-Democratic Party.

Mimoza Gjerkaj testified that she left Albania out of fear for her life. She claimed that in April 2000, three masked men shoved her into a car and asked her

for her husband's whereabouts.  When she refused to tell them, they struck her in the face and threw her out of the car.  Some relatives found her lying on the ground unconscious.  In November 2000, someone attempted to kidnap her daughter, Renata, at a wedding reception.  Gjerkaj's cousin intervened and foiled the attempt.  She and Renata came to the United States in the next month.

In addition to his and his wife's testimony, Gjerkaj presented several documents, including State Department Country Reports for 2001, 2002, and 2006, and letters from the Christian-Democratic Party vouching for Gjerkaj and his wife's membership and experiences with the Party.

The IJ denied petitioners' applications for asylum and withholding of removal and ordered their removal because Paulin Gjerkaj failed to present credible and consistent testimony relating to significant aspects of his claims of persecution, and neither he nor Mimoza Gjerkaj established past persecution or a well-founded fear of future persecution.

Addressing Paulin Gjerkaj's testimony, the IJ made a clean credibility determination, specifically citing material inconsistencies between the testimony Paulin Gjerkaj gave on direct and cross-examination and statements he made in his asylum application, especially as to the incidents that allegedly occurred in 1997.  For example, in his asylum application, he stated that in February 1997, someone

hit him at a newsstand while he was reading a pro-Democratic Party newspaper, but he listed no other incident of persecution occurring during that year. He did not mention this newsstand event when he took the stand at the removal hearing, however, but when questioned about it on cross-examination, he simply stated, "I know it happened by the newsstand, but I don't recall the details on that one." Focusing on 1997, he said that police grabbed him, beat him up, and "flat out" told him that if he continued to participate in politics, they would kill him. Later that year, two masked men jumped out of a car outside his house, beat him up, and threatened to "eliminate" him if he continued to talk negatively about the Socialist Party. He attempted to explain this inconsistency by stating that two incidents occurred in 1997, one of which was the event at the newsstand, but this summary was inconsistent with both his testimony on direct examination and what he stated in his asylum application.

Referring to his father's murder, the IJ noted that he was merely speculating when he said that the culprits were Socialists. He believed this even though his father had not been involved in politics and the Socialists had no reason to be interested in him.

Turning to the testimony of Mimoza Gjerkaj, the IJ found that it failed to show anything rising to the level of persecution. He credited her relation of the

10

April 2000 encounter with the masked men, found that she did not suffer serious harm, and that the experience did not arise to the level of persecution. As for the attempted abduction of her daughter, she only speculated about why her daughter would be a victim or who may have been behind the attempt.

After concluding that petitioners failed to make out a case for asylum, the IJ found that they had not established a well-founded fear of persecution if removed to Albania. Paulin Gjerkaj had remained there for nearly four years without harm following his father's death; Mimoza Gjerkaj had not been involved in politics; the Socialist Party was no longer in control; the Democratic Party was in power; and Albania was a parliamentary democracy.

We conclude that substantial evidence supports the IJ's and BIA's findings that Paulin Gjerkaj's testimony was not credible in significant respects, and the agency's conclusion that petitioners failed to establish past persecution or a well-founded fear of future persecution. The IJ and the BIA did not err in concluding that Paulin Gjerkaj was not entitled to humanitarian asylum because he did not show that his imprisonment in 1985 was sufficiently severe or had long-lasting effects, especially where he continued to oppose the Communist/Socialist Party after being released from prison. *See Mehmeti*, 572 F.3d at 1200-01. He did not establish that he suffered persecution beyond the time period of his original

11

imprisonment. Assuming the accuracy of his testimony about the 1997 beatings, the 1998 detention following his father's death, and Mimoza's account of her alleged kidnapping, such mistreatment did not rise to the level of persecution, especially where neither Paulin nor Mimoza Gjerkaj suffered major injuries. *See Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168 (11th Cir. 2008) (concluding that 36-hour detention, beating, and threat of arrest did not amount to persecution).

In sum, we deny the petition for review of the BIA's October 13, 2009 removal order.

## II.

Petitioners ask that we find an abuse of discretion in the BIA's May 10, 2010 order denying their motion to reopen. *See Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005). Motions to reopen may be filed before the BIA when appropriate. *See* INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 103.5(a)(2), 1003.2(c), 1003.23(b)(3). Such motions are disfavored, especially in a removal proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Abdi*, 430 F.3d at 1149 (quotation omitted). Our review is limited to whether there has been an exercise of administrative discretion and whether the exercise has been arbitrary or capricious. *Abdi*, 430 F.3d at 1149.

A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B); *Abdi*, 430 F.3d at 1149. Motions to reopen may be granted if there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. *See* 8 C.F.R. § 1003.2(c)(1); *see also Abdi*, 430 F.3d at 1149. To make such a showing, the alien "bears a 'heavy burden,' and must 'present evidence of such a nature that the [BIA] is satisfied that if proceedings before the [IJ] were reopened, with all attendant delays, the new evidence offered would likely change the result in the case.'" *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006) (quotation omitted).

We find no abuse of discretion in the BIA's denial of petitioners' motion to reopen. The motion relied primarily upon evidence that petitioners could have presented at their removal hearing. We therefore deny the petition to review the BIA's May 10, 2010 order.

PETITIONS FOR REVIEW DISMISSED, IN PART;[3] DENIED IN PART.

---

[3] *See* note 1 *supra.*