[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10949
Non-Argument Calendar
_____

Agency No. A200-615-651

MIGUEL ANGEL RIVAS-CASTRO,
MIGUEL ANGEL RIVAS-ABARCA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 16, 2014)

Before TJOFLAT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Miguel Angel Rivas-Castro and his son, Miguel Angel Rivas-Abarca, natives and citizens of Nicaragua, petition this court to review of the Board of Immigration Appeals' (the "BIA") dismissal of their appeals of the Immigration Judge's (the "IJ") denial of their applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CAT").[1]  The IJ denied their applications for asylum as untimely, also finding that they did not demonstrate changed circumstances that would excuse the untimeliness.  The IJ denied their applications for withholding of removal and CAT relief, finding that they did not sufficiently demonstrate that they would be subject to persecution or torture if removed to Nicaragua.  The BIA affirmed.

Rivas-Castro is a former member of the Sandinista Front of the Nicaraguan Armed Forces who deserted in 1989 due to his disagreement with the policies of President Daniel Ortega.[2]  He claims fear of reprisal due to his desertion and

---

[1]  Rivas-Castro entered the United States on January 26, 2001, as a non-immigrant visitor with authorization to remain until July 25, 2001.  Rivas-Abarca entered the United States on March 31, 2004, as a non-immigrant visitor with authorization to remain until September 30, 2004.  Each was were issued a Notice to Appear on October 13, charging them with being removable  pursuant to Immigration and Nationality Act § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B) for having remained in the United States for a time longer than permitted.  Both conceded removability.  Both filed applications for asylum, withholding of removal and relief under the U.N. Convention Against Torture.  Rivas-Castro is the lead applicant.

[2]  Rivas-Castro served in the Sandinista Armed Forces from 1979 to 1989.  In 1984, he was promoted to the rank of lieutenant and became chief of anti-aerial artillery.

2

political views, and Rivas-Abarca claims fear of reprisal solely due to his father's actions.

## I.

We review questions about our subject matter jurisdiction *de novo*. *See Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). We do not have jurisdiction to review a claim unless the petitioner has exhausted his administrative remedies with respect to that claim. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (holding that this Court lacks jurisdiction to consider a claim that has not been raised before the BIA).

An alien must file his asylum application within one year of arriving in the United States. Immigration and Nationality Act ("INA") § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered if the applicant demonstrates changed circumstances which materially affect his eligibility for asylum or extraordinary circumstances relating to the delay in filing the application. INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). We lack jurisdiction to review the agency's determination that an asylum application was untimely filed, including the determination that the alien failed to establish circumstances that would excuse the untimely filing of the application. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

We lack jurisdiction to review any claim to relief raised by Rivas-Abarca. Although Rivas-Castro and Rivas-Abarca appear to treat Rivas-Abarca's asylum application as a derivative claim, in fact he is not listed as a derivative beneficiary on Rivas-Castro's application, and he filed his own application.[3]  Even if Rivas-Abarca's contentions on appeal could be construed as an argument regarding his own application, we would not have jurisdiction to review his claim because he failed to exhaust his administrative remedies.  After Rivas-Abarca's application for asylum, withholding of removal, and CAT relief was denied by the IJ, he failed to exhaust any argument about his own separate application when he did not raise such an argument to the BIA.  *See Amaya-Artunduaga*, 463 F.3d at 1250.

We also lack jurisdiction to review the IJ's and BIA's determination that Rivas-Castro's asylum application was untimely and that he failed to demonstrate circumstances to excuse that untimeliness.  *See* INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); *Mendoza,* 327 F.3d at 1287.  Accordingly, we dismiss the petition for review as to these issues.

## II.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th

---

[3]  In any event, Rivas-Abarca is not entitled to derivative benefits because: (1) as to asylum, he was over 21 when Rivas-Castro filed his asylum application, and (2) as to withholding of removal and CAT relief, no derivative benefits exist.  *See* INA § 208(b)(3), 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 208.16(c)(2), (4); *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007).

Cir. 2001).  Where the BIA agrees with the IJ's reasoning, we will also review the

IJ's decision to that extent.  *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341,

1350 (11th Cir. 2009).

    We review a factual determination that an alien is statutorily ineligible for

withholding of removal under the substantial evidence test, and will affirm if the

BIA's decision "is supported by reasonable, substantial, and probative evidence on

the record considered as a whole."  *Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 727

(11th Cir. 2010).  Under the substantial evidence test, we view "the record

evidence in the light most favorable to the agency's decision and draw all

reasonable inferences in favor of that decision."  *Diallo v. U.S. Att'y Gen.*, 596

F.3d 1329, 1332 (11th Cir. 2010).  In order to conclude that a finding of fact

should be reversed, we must determine that the record "compels" reversal.

*Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

    To qualify for withholding of removal, the applicant must show that if

returned to his country, his "life or freedom would be threatened in that country

because of [his] race, religion, nationality, membership in a particular social group,

or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  He must

demonstrate that it is more likely than not that he will be persecuted or tortured

upon removal to his country.  *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th

Cir. 2006).  He must also show a nexus between a statutorily protected ground and

5

the feared persecution, and can do so by presenting specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of the statutorily protected factor. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).

Mere prosecution for violating legitimate, generally applicable state laws does not constitute persecution unless the alien shows that the prosecution is based on a statutorily protected ground and that the punishment under the law is sufficiently extreme to constitute persecution. *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1315–16 (11th Cir. 2006). We have previously held that the record did not compel a finding that the alien had a well-founded fear of persecution when he lived without incident and obtained a government-issued identification card in his home country after deserting the military. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346–47 (11th Cir. 2008).

Substantial evidence supports the IJ's and BIA's conclusion that Rivas-Castro failed to show that it is more likely than not that he would be persecuted upon returning to Nicaragua. Rivas-Castro testified that after deserting the military he lived in Nicaragua without incident from 1989 to 2001,[4] and used his real name to obtain a visa in Nicaragua in 2000. *See Mohammed*, 547 F.3d at 1346–47.

---

[4] When Rivas-Castro left the military in 1989, he owned two homes and took up residence in one of them, living there comfortably and quietly until he left the country in 2001. In addition to Rivas-Abarca, he has two children.

Although he argues that he was only safe due to the fact that Ortega lost the presidency after his desertion, the record shows that Ortega was in power for one-and-a-half years following his desertion. Moreover, his family has not suffered any harm due to his desertion, he never expressed his political views to higher-ranking officers of the Sandinista Front, and he testified that he did not know what would happen to him if he returned to Nicaragua. Thus, the record does not compel a finding that Rivas-Castro presented specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of any statutorily protected factor. *See Forgue*, 401 F.3d at 1286. Substantial evidence also supports the BIA's finding that any adverse effects Rivas-Castro would suffer in Nicaragua would constitute prosecution and not persecution. *See Scheerer*, 445 F.3d at 1315–16. Accordingly, we deny the petition for review as to this issue.

## III.

We review factual determinations under the substantial evidence test. *Adefemi*, 386 F.3d at 1026–27.

"To establish eligibility for CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government officials if returned to the designated country of removal." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010); *see also* 8 C.F.R. § 1208.16(c)(2). To constitute torture, an act must be specifically intended to

7

inflict severe physical or mental pain or suffering.  8 C.F.R. § 208.18(a)(5).  Also, torture "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions."  *Id.* § 208.18(a)(3).

Substantial evidence supports the IJ's and BIA's conclusion that Rivas-Castro failed to show that, if returned to Nicaragua, it is more likely than not that he would face torture by the government or with government acquiescence.  Again, Rivas-Castro testified that he lived without incident in Nicaragua after his desertion from 1989 to 2001, with Ortega in power for one-and-a-half years of that time.  Although he presented evidence that some military deserters were subject to imprisonment and he was threatened with imprisonment, the record does not compel the conclusion that such punishment was likely to involve anything other than lawful sanctions.  *See id.*  Accordingly, we deny the petition for review as to this issue.

PETITION DISMISSED IN PART, DENIED IN PART.