[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17407
Non-Argument Calendar
_____

Agency No. A205-681-439

JUAN CARLOS GUILLEN ZERPA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 5, 2017)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Juan Carlos Guillén Zerpa petitions for review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  After careful review, we deny his petition.

I.

A.

Guillén Zerpa is a native and citizen of Venezuela.  He worked as a public accountant in Venezuela from 1989 until 2011.  In 2010, Guillén Zerpa was asked to prepare an asset-verification letter on behalf of the Michael Kenwood Group LLC ("MKG").  MKG was founded in 2006 by Francisco Illarramendi, a former Venezuelan government official.  Between 2006 and 2011, the government of Venezuela entrusted Illarramendi and MKG with $500 million in pension funds to invest.  The pension funds belonged to current and former employees of Petróleos de Venezuela, S.A. ("PDVSA"), the state-controlled oil company.  Rather than invest the funds, Illarramendi used the money to concoct a massive Ponzi scheme, and ultimately between $300 million and $500 million of the pension fund money was lost.

Guillén Zerpa was offered $1 million to prepare the asset-verification letter.  In the letter, he falsely represented that MKG had $275 million in assets stemming

from loans owed by various Venezuelan companies to MKG.  On January 3, 2011, he submitted the letter to MKG.  At the time, the U.S. Securities and Exchange Commission ("SEC") was investigating MKG and Illarramendi.

On January 10, the SEC asked Guillén Zerpa to verify the letter's existence. On March 3, Guillén Zerpa flew to Miami, to meet with Illarramendi for the first time.  He was admitted as a visitor to the United States under a B-2 visa.  He was then immediately arrested in connection with the investigation into MKG.

Guillén Zerpa was charged with conspiracy to obstruct justice and obstruction of an official proceeding in violation of 18 U.S.C. §§ 371, 1512(c)(2), (k).  On May 5, he pled guilty to the conspiracy charge and was sentenced to 14-months imprisonment followed by 24 months of supervised release.  On January 24, 2013, he was released from federal prison.

### B.

On November 27, 2012, while in prison, Guillén Zerpa filed an application for asylum, withholding of removal, and CAT relief.  He claimed that because of his involvement in defrauding PDVSA he would be persecuted and tortured if returned to Venezuela.  Guillén Zerpa also claimed he would be persecuted

3

because he was a member of the "Bolivarian Bourgeoisie"[1] and because of his political opposition to President Hugo Chávez's socialist regime.

On June 2, 2014, the Department of Homeland Security ("DHS") served Guillén Zerpa with a notice to appear ("NTA") charging him as removable under 8 U.S.C. § 1227(a)(1)(B) for being in the United States longer than permitted. On August 21, 2014, Guillén Zerpa appeared before an IJ and conceded the factual allegations of the NTA.

On May 20, 2015, Guillén Zerpa testified before the IJ in support of his application for asylum, withholding of removal, and CAT relief. At the hearing, Guillén Zerpa called Dr. Freddy Aray Lárez to testify as an expert witness. Dr. Lárez is a Venezuelan attorney and law professor who sought to opine on the criminal justice system in Venezuela and the risks faced by Guillén Zerpa if he were prosecuted for his role in the PDVSA fraud. Dr. Lárez's written opinion also discussed the risk Guillén Zerpa faced of kidnapping and torture by former PDSVA employees. The government objected to Dr. Lárez's testimony, asserting it was irrelevant because Guillén Zerpa had not provided any evidence that he would actually be criminally prosecuted in Venezuela. In support, the government noted the Venezuelan government had not taken any action against Guillén Zerpa's

---

[1] Though Guillén Zerpa never directly defined this group, it appears to consist of wealthy and successful professionals in Venezuela whom the government accused of subverting the interests of the Venezuelan people.

4

assets, no government prosecutors or investigators had initiated contact with him or begun a formal investigation,[2] and his wife remained free to travel between Venezuela and the United States to testify at the hearing. Guillén Zerpa countered that he was aware from press accounts that prosecutors and the Venezuelan congress were investigating persons associated with the PDVSA fraud, which could include him. He also testified that the military was conducting a confidential investigation, but admitted he could not corroborate that assertion.

The IJ allowed the parties to question Dr. Lárez on voir dire, during which Dr. Lárez testified to his experience in Venezuela's criminal justice system but admitted he had no independent knowledge concerning PDVSA or Guillén Zerpa's case. The IJ declined to allow Dr. Lárez to testify further because it remained speculative whether Guillén Zerpa would actually be prosecuted in Venezuela. As the IJ explained in a written decision, "Dr. Lárez's testimony would be irrelevant and cumulative, as he could not testify about the PDVSA case or fraud cases in general and would simply be relying upon evidence already in the record."

After the hearing, the IJ found Guillén Zerpa's petition for asylum was time-barred, and therefore he was statutorily ineligible for asylum. The IJ then found Guillén Zerpa had failed to show that he would suffer persecution on account of his membership in a protected social group or on account of his political beliefs,

---

[2] During voir dire, Dr. Larez testified that if an investigation had begun, Guillén Zerpa would have the right under Venezuelan law to access information related to the investigation.

5

and therefore he was not entitled to withholding of removal.  Finally, the IJ found CAT relief was not warranted because Guillén Zerpa failed to show it was more likely than not that he would be imprisoned and tortured by the government of Venezuela.

Guillén Zerpa appealed to the BIA.  He argued that the IJ violated his due process rights by excluding Dr. Lárez's testimony, which he claimed would have been "relevant to his well founded fear of future persecution."  He also generally contested his eligibility for asylum, withholding of removal, and CAT relief.

The BIA affirmed the IJ's decision denying asylum and withholding of removal because it found no "nexus between a potential persecution and a protected ground" under the Immigration and Nationality Act ("INA").  Because of this finding, the BIA did not reach the question of the timeliness of  Guillén Zerpa's asylum application. The BIA also affirmed the IJ's decision denying CAT relief because Guillén Zerpa's claim that he would be tortured "is based on a chain of suppositions which he has not established are more likely than not to occur." Finally, the BIA found that, because Dr. Lárez was an expert in Venezuelan criminal law, the exclusion of his testimony would only have been prejudicial if Guillén Zerpa had demonstrated that he was under investigation or that criminal charges would be forthcoming.  Because he hadn't, the IJ's decision did not violate his due process rights.

On December 5, 2016, Guillén Zerpa filed a petition for review with this Court. He argues that the IJ violated his due process rights by excluding Dr. Lárez's testimony. He also argues that the BIA erred in concluding he was ineligible for relief.

## II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). When the BIA explicitly agrees with the findings of the IJ, we review the decision of both the BIA and the IJ as to those issues. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). Here, because the BIA agreed with the IJ's findings, and made additional observations, we review both decisions to the extent our jurisdiction permits.

On appeal from the BIA's decision, we review legal and constitutional questions de novo. Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1307 (11th Cir. 2013). Factual determinations are reviewed under the substantial-evidence test, which requires us to "view the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). We affirm the BIA's decision if, considering the record as a whole, it is supported by reasonable, substantial, and probative evidence. Id. at 1027. In order to reverse

7

administrative factual findings, we must determine that the record "compels" reversal, not merely that it supports a different conclusion.  Id.

## III.

Guillén Zerpa first argues that his due process rights were violated when the IJ excluded his expert witness.

Petitioners in removal proceedings are entitled to due process.  Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 548 (11th Cir. 2011) (per curiam).  Due process requires that petitioners receive a full and fair hearing.  Id.  To establish a due process violation, the petitioner must show a "depriv[ation] of liberty without due process of law and that the purported errors caused [] substantial prejudice."  Id. (quotation omitted).  To show substantial prejudice, the petitioner must establish that the outcome of the proceeding would have been different but for the alleged errors.  Id.  "[D]eprivation of . . . the ability to present evidence on one's behalf in a removal proceeding would, under certain circumstances, constitute a due process violation."  Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1282 (11th Cir. 2007).  The IJ has broad discretion to accept evidence into the record and weigh its evidentiary value.  8 C.F.R. § 1003.10(b) (authorizing IJs to "exercise their independent judgment and discretion and [] take any action consistent with their authorities under the [INA]").

The BIA did not err in finding there was no due process violation. Dr. Lárez's testimony regarding the Venezuelan criminal justice system may have been relevant if Guillén Zerpa had established it was likely that he would be prosecuted if returned to Venezuela. However, the IJ found that Guillén Zerpa had failed to make this showing, and Guillén Zerpa has not sufficiently rebutted this factual finding. It is not violative of due process for a tribunal to limit witness testimony that "would be cumulative or irrelevant." United States v. Wuagneux, 683 F.2d 1343, 1355 (11th Cir. 1982).

For this same reason the BIA correctly concluded that Guillén Zerpa failed to show the exclusion of his expert's testimony resulted in substantial prejudice. Even if Dr. Lárez had been permitted to testify, his knowledge of the general Venezuelan criminal justice system would not have swayed the IJ because there was no showing that it was likely that Guillén Zerpa would be prosecuted. Additionally, this testimony would have been cumulative of evidence already in the record concerning the general state of Venezuela's executive and judicial branches.

IV.

Guillén Zerpa next argues that the BIA erred in concluding that he was ineligible for asylum, withholding of removal, or CAT relief. Specifically, he

9

argues that he has a well-founded fear of persecution on account of his membership in a particular social group and his political opinion.

An applicant for asylum must present specific and credible evidence demonstrating that he (1) was persecuted in the past based on one of the protected grounds or (2) has a well-founded fear that he will be persecuted in the future based on one of the protected grounds. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam). To establish a well-founded fear of future persecution, an applicant must "present detailed, specific facts showing a good reason to fear that he will be singled out for persecution on account" of a protected ground. Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1345 (11th Cir. 2008) (quotation omitted and alteration adopted). The asylum applicant bears the burden of proving that one of the enumerated grounds "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

An applicant for withholding of removal bears the burden of establishing that it is "more likely than not" that he will be persecuted on account of a protected ground. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam) (quotation omitted). If an applicant is unable to prove eligibility for asylum, the applicant is generally precluded from qualifying under the more stringent standard for withholding of removal. Id. at 1232–33.

We have held that "[f]ear of prosecution under fairly administered laws . . . does not ordinarily entitle an alien to asylum or withholding of removal." Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1315 (11th Cir. 2006). To establish a claim for asylum or withholding of removal based on a fear of criminal prosecution, the applicant must show that the "prosecution is based on a statutorily-protected ground." Id. at 1316.

An applicant seeking protection under CAT must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quotation omitted). Additionally, the applicant must show that the torture would be by or with the acquiescence of the government. Id.

Guillén Zerpa has failed to show that any future persecution would be on account of a protected ground. He has failed to fully define the "Bolivarian bourgeoisie," and affluence alone is not an immutable characteristic that can serve as the basis of a protected social group. See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 404, 405 (11th Cir 2016) (per curiam) (noting that "a particular social group must [] be defined with particularity" and that "sharing a common, immutable characteristic is a necessary, but not sufficient, condition to qualify as a particular social group under BIA precedent" (quotation omitted)); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) ("[A]n alien is required to present

11

specific, detailed facts showing a good reason to fear that he or she will be <u>singled out</u> for persecution on account of such a protected activity." (quotation omitted)).

Similarly, the IJ noted that Guillén Zerpa "lived and worked under a socialist regime for the majority of his life without facing any politically-motivated repercussions" and therefore he had failed to show a reasonable fear of persecution based on his political beliefs.  This fact, coupled with the fact that he has not shown a likelihood of prosecution—the government of Venezuela has prosecuted others involved in the PDVSA fraud but has taken no action against Guillén Zerpa—means that he has not satisfied his burden to show a well-founded fear of future persecution based on his political opinion.

To the extent Guillén Zerpa fears persecution based on his involvement in the PDVSA fraud scheme, we note that prosecution under fairly administered laws does not support eligibility for asylum.  See <u>Scheerer</u>, 445 F.3d at 1315–16.  Such a prosecution would be based on Guillén Zerpa's admitted criminal activity, and not based on any statutorily protected ground.  See <u>id.</u> at 1316.

Finally, substantial evidence in the record also supports the BIA's conclusion that Guillén Zerpa failed to show it is more likely than not he would be tortured by or with the acquiescence of the Venezuelan government if returned.  Generally, lawful imprisonment for criminal behavior does not constitute torture.  See <u>Cadet v. Bulger</u>, 377 F.3d 1173, 1181 (11th Cir. 2004).  As previously

12

discussed, Guillén Zerpa has not demonstrated a likelihood of criminal prosecution if returned to Venezuela, and thus even if it could be shown that there was a possibility of torture within the Venezuelan criminal justice system, he has not met his burden to show that torture is more likely than not to occur.[3]

**PETITION DENIED.**

---

[3] Guillén Zerpa also argues that the IJ erred as a matter of law in finding that he did not qualify for an exception to the one-year deadline for filing for asylum. However, for the reasons previously discussed, Guillén Zerpa is not eligible for asylum relief and therefore we, like the BIA, need not reach this question.